HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE SIGN POST, INC., | NO. CV09-1420 RSL |
| Plaintiff, | PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| vs. | |
| BOB'S BURGER AND BREW OF WASHINGTON LLC, *et al.*, | **NOTE ON MOTION CALENDAR: October 1, 2010** |
| Defendants. | |

Plaintiff The Sign Post, Inc. ("TSP"), hereby moves pursuant to Rule 56 for partial summary judgment that (1) TSP is the sole legal owner of valid copyrights in the works that are the subject of this lawsuit (each a "Work," collectively the "Works"), and that (2) Defendants copied the Works and/or solicited and assisted others to copy the Works.

Because no genuine issue of material fact exists with respect to the ownership and validity of the copyrights in the Works, and the copying or the solicitation or assistance of others in copying the Works, TSP respectfully requests that its motion be granted.

## BACKGROUND

TSP is a Bellingham, Washington-based sign design and manufacturing company. TSP was founded by Ray George in approximately 1980, and he continues to operate the business with his wife, Glorene George.

1   Defendant Bob Kildall is the founder of a chain of restaurants known as Bob's Burger and

2   Brew.  Bob, along with his son, Rick Kildall (together, the "Kildalls"), are the principal members

3   of Defendant Bob's Burger and Brew of Washington LLC ("BBB").  BBB, among other things,

4   is a franchisor of several Bob's Burger and Brew restaurants in Washington State.  Defendant B3

5   Birch Bay, LLC ("Birch Bay LLC"), is a Bob's Burger and Brew restaurant franchisee.

6   Defendant Cody Hurlburt is a Birch Bay Bob's member and the manager of the Birch Bay Bob's

7   restaurant.  Defendant Yakima Bob's Burgers and Brew LLC ("Yakima LLC") is also a Bob's

8   Burger and Brew franchisee.  Defendant Jeff Roberts is a Yakima Bob's member and the

9   manager of the Yakima Bob's restaurant.  Bob Kildall is also a Yakima Bob's member.

10   This case concerns the unauthorized use, by Defendants and certain sign companies that

11   they hired, of signage designs created by TSP.  At one time, TSP, BBB and the Kildalls enjoyed

12   a mutually beneficial business relationship wherein TSP manufactured and installed signs at

13   various Bob's locations.  For each sign that it was going to manufacture and install, TSP first

14   created a printed two-dimensional sign design.  The Works at issue in this dispute are designs

15   that TSP created, and which were used by TSP to manufacture and install signs at various Bob's

16   restaurants.  Each Work contained a notification that the copyright in the Work was owned by

17   TSP.  Further, TSP applied for and was issued U.S. copyright registrations for each of the

18   Works.  TSP has never entered into any agreement transferring ownership of the copyrights in

19   the Works, nor has it licensed any person or entity to use the Works.

20   Beginning in 2006, BBB, the Kildalls, and BBB franchisees began soliciting bids from

21   multiple sign companies for signs to be installed at new Bob's restaurant locations, and since that

22   time, sign companies other than TSP have manufactured and installed the signs.  In each of these

23   instances, BBB, the Kildalls and/or a BBB franchisee have instructed the other sign companies to

24   copy the signs previously created by TSP.  In at least one instance, a franchisee (Defendant

25   Roberts) actually supplied the chosen sign company with TSP's designs.

26   TSP brought this action to stop the Defendants from further infringing on TSP's

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1  copyrights in the Works, and from soliciting and assisting other sign companies from doing the

2  same.

3  ## FACTS

4      The relevant facts are supported by the Declaration of Ray George ("George Decl.")

5  (with accompanying Exhibits A through D), and the Declaration of Sean M. McChesney

6  ("McChesney Decl.") (with accompanying Exhibits A through F).

7  **A.   The Original Bob's Restaurant**

8      Bob Kildall opened the first Bob's Burger and Brew restaurant in 1982, in Lynden,

9  Washington.  (Kildall Deposition Transcript 7:25-8:1 (attached as Exhibit A to McChesney

10  Decl.) ("Kildall Dep.").)  The restaurant was not new construction, but an existing restaurant that

11  had been previously operated as "Dean's Family Restaurant."  (Kildall Dep. 8:7-12, 47:2-4.)  At

12  the time that Mr. Kildall purchased Dean's, there was a sign and two lampposts outside the

13  restaurant.  (Kildall Dep. 47:2-3, 49:5-8.)  At that time, the sign was red, and it said "Dean's

14  Family Dining" on it.  (Kildall Dep. 47:12.)  After Mr. Kildall purchased Dean's, the sign was

15  repainted to read "Bob's Burgers & Brew," but the red color remained.  (Kildall Dep. 47:17-23.)

16  **B.   Creation of the Works**

17      In 2002, TSP was engaged by BBB to provide signs for a new Bob's restaurant at Barkley

18  Village in Bellingham, Washington.  (Defendant Bob's Burger and Brew of Washington, LLC's

19  First Interrogatories and Requests for Production to Plaintiff The Sign Post, Inc. and Responses

20  Thereto 5:25-6:1 (attached as Exhibit F to McChesney Decl.) ("TSP Resp.").)  TSP designed,

21  manufactured and installed a horizontal wall sign for this location.  (TSP Resp. 5:25-6:18;

22  Kildall Dep. 30:8, 38:14-17, Ex. 6 (photograph of Barkley Village sign).)  In creating the design

23  for the signs at the Barkley Bob's, TSP incorporated the shape of the red sign that was outside the

24  original Lynden Bob's, as well as a lamppost design based on one of the lampposts outside the

25  Lynden Bob's (TSP Resp. 6:3-4.)  These designs were not literal.  (TSP Resp. 6:4-6.) For

26  example, the actual red sign was broken up, with a split box shape in the middle, inside of which

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

there was a split white circle and lettering.  (*See* Kildall Dep. Ex. 1 (photograph of the sign

outside the Lynden Bob's).)  TSP included the red sign shape and the lamppost design in an

attempt to bring some of the feel of the original Lynden restaurant to the new Barkley Village

restaurant.  (*Id.*)  In addition to the incorporation of those designs, TSP chose the lettering styles

and the various lettering sizes, added accents and arranged all of the various elements and

lettering into an appealing overall design.  (TSP Resp. 6:9-18.)  The result was the sign design

shown in the Work having registration number VA-1-418-255.  (George Decl. Ex. C.)

   Mr. Kildall did not provide <u>any</u> materials to TSP to be used in designing the new signs.

As Mr. Kildall recollects:

> Q. And did you provide The Sign Post with any drawings that they could use
>   to produce their drawings for the horizontal signs?
>
> A. No, sir.
>
> Q. Do you recall whether The Sign Post produced any drawings for the
>   horizontal signs at Barkley Village?
>
> A. It was just a name – I mean this – Bob's Burgers and Brew on a horizontal
>   sign.  I could have probably drawn that one.
>
> Q. But you didn't provide any sketches to them –
>
> A. No.
>
> Q. You provided –
>
> A. Well no.  It was black and white: the building had only one way you could
>   do it, and it wasn't – it was the first – it was – there was no imagination
>   here – it was just an – it was a name.  That's all it was: Bob's Burgers and
>   Brew.

(Kildall Dep. 30:11-31:1.)

   In 2003, TSP was engaged by BBB to provide signs for the Cook Road Bob's restaurant

in Burlington, Washington.  (TSP Resp. 6:19-20.)  The Cook Road Bob's was the first of a new

stand-alone architectural design for Bob's restaurants.  (Kildall Dep. 62:19-22; TSP Resp. 6:20-

21.)  There were new architectural elements to the building design, including large tapering

columns, or pillars, at the entryway.  (Kildall Dep. 35:20, 62:24-25; Ray George Deposition

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4
CASE NO. CV09-1420 RSL

FOCAL PLLC
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:   (206) 577-9916
Fax:  (206) 260-3966

1   Transcript 24:5-9, 25:10-11, 27:12-14 (attached as Exhibit B to McChesney Decl.) ("George

2   Dep."); TSP Resp. 7:8-10.)

3       TSP manufactured and installed two horizontal wall signs for the Cook Road location

4   using the wall sign design it had created for the earlier Barkley location. (TSP Resp. 6:24-25)  In

5   addition to the wall signs, the Cook Road location required a new type of sign over the entryway.

6   (TSP Resp. 6:25-7:2.)  Consequently, TSP developed a new design for the entryway sign. (TSP

7   Resp. 7:2-8:6.)  For the new design, TSP wanted to take into account the new building

8   architecture, while trying to incorporate elements that would hearken back to the Barkley

9   location. (TSP Resp. 6:21-23.)  TSP noticed a trapezoid shaped object at the Barkley restaurant

10  that complemented, or mimicked, the shape of the slanting columns at the entryway. (George

11  Dep. 29:3-4; TSP Resp. 7:3-10.)  TSP created a version of the trapezoid and placed the word

12  "Bob's" across it in a different letter style than had been used in previous designs. (George Dep.

13  30:5-31:2; TSP Resp. 7:12-13.)  TSP then created a new lamppost design that was more in

14  keeping with the modern style of the new Bob's architecture. (TSP Resp. 7:19-23.)  TSP

15  proceeded to put the finishing touches on the new design, adding accents, choosing colors, and

16  incorporating an oval shield to tie all of the elements together. (TSP Resp. at 7:21-8:6.)  The

17  result was the sign design shown in the Work having registration number VA-1-418-257.

18  (George Decl. Ex. D.)

19      Each Work was created by Ray George and a graphic designer employed by TSP, Ron

20  Pattern. (TSP Resp. 8:16-19; George Dep. 32:8-22.)  BBB did not participate in the drafting of

21  the Works.  In his deposition, Bob Kildall stated:

22      Q.      And did you ever generate any schematics yourself?

23      A.      I don't think so.

24      Q.      And so you had the vision and you would basically look at what the
                schematics that Ray produced and give him guidance on whether you
25              particular liked particular schematics or not?

26          ….

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5
CASE NO. CV09-1420 RSL

FOCAL PLLC
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:   (206) 577-9916
Fax:  (206) 260-3966

A.   Once again, we haven't really changed very much.  We - - my idea of what we are supposed to be is a continuous stepping stone – obviously, our free standing buildings are much nicer and much different than this.
     So we have incorporated what we started in '82 and just – it's virtually just nicer, but it is what we are and have been since 1982.

Q.   I guess what I'm trying to get at is who actually did the drawings.  And I want to go back to that.
     I understand you had the vision, but ultimately Ray was – is it accurate to say ultimately Ray produced the drawings that you approved or you said, you know, this is the particular one that I want to go with because this embodies my vision?

     ….

A.   Once again, it depends on what sign you're talking about, where we were at and what - - some of this I was almost a hundred percent I knew exactly what I wanted.  And yes, he had to build it.  He built it or he - - you know - - he put it together.

Q.   And did he create the drawings as well?

A.   When you get to the final form, yeah, there has to be a drawing.
     It would start off with several things or my ideas.  He would take that or the stuff that he brought in that we would work and try to have it conform with what we are and what we're about.  And, yes, he would get to the final.  And then I would approve it, of course.  He'd bring it out.  If that fit and that's what I wanted, that's when the green light was given.

Q.   Okay.  But you didn't actually ever produce any drawings yourself?

A.   No.

Q.   Is that a "Yes" or –

A.   No.

(Kildall Dep. 19:19-21:12.)  Later, in discussing the development of the designs for the Cook

Road Bob's signs, Mr. Kildall recollects:

Q.   And do you recall what materials you provided The Sign Post in the course of their building the sign for you at Cook Road?

     ….

A.   Can you be specific again?

Q.   Sure.  Did you ever provide them with any sketches when they built the sign at Cook Road?

FOCAL PLLC
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:   (206) 577-9916
Fax:  (206) 260-3966

A.      No.  As I say, as in the past, he'd bring – he would take our thoughts –
we'd work our thoughts, it had to fit here.  We had a specific area to work
in.  We were – this is what we were.  And he had – it was easy for him to
work one up with our stuff.  And then he just took off like – and brought
his material to me, and I'd look at it.  And we would – if we made a –
came here with the changes, you know, because we did that together.  I
mean it wasn't like – I mean we were working together.  We weren't – we
weren't trying to – I guess – we're not trying to – we were working
together to get something great.  And I've always had them standards, Ray
knew this.  And so that sign – which I still believe is beautiful and all that
– but, yeah, that's – that's something that we worked together on.
                And, no, I don't do any of the sign work.  I'm not a sign designer.

(Kildall Dep. 61:14-62:13.)

## C.      Registration of the Works

In 2007 TSP attended an educational meeting of the World Sign Association (a trade

group) about how to protect sign designs.  The meeting provided information regarding

copyrights, including federal registration.  (George Decl. ¶ 2.)  In June 2007, TSP, through its

attorney, applied for copyright registrations for each of the Works with the United States

Copyright Office.  (George Decl. Ex.'s A-B (Certificates of Registration VA 1-418-255 and VA

1-418-257).)  The Copyright Office issued registrations for each of the Works.  (*Id.*)  The

registration of each Work occurred within five years of the date of first publication of each Work

(*Id.*)

## D.      Birch Bay Bob's Restaurant

In November 2007, a Bob's restaurant was opened at Birch Bay Square in Blaine,

Washington.  (Hurlburt Deposition Transcript 5:15-16 (attached as Exhibit D to McChesney

Decl.) ("Hurlburt Dep.").)  The Birch Bay Bob's was owned and operated by Birch Bay LLC,

which in turn was owned by Cody Hurlburt, among others.  (Hurlburt Dep. 5:8-10, 5:20-25.)

Cody Hurlburt is also the manager of the restaurant.  (Kildall Dep. 89:11-15.)  Birch Bay LLC

operates the restaurant pursuant to an operating agreement with BBB.  (Hurlburt Dep. 6:20-7:9,

Ex. 1 (Birch Bay LLC-BBB Operating Agreement).)  Under the operating agreement, BBB

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1  maintained control over decisions regarding signage at the Birch Bay Bob's.  (Hurlburt Dep. 8:9-

2  16.)

3  Both Cody Hurlburt and Bob Kildall were involved in procuring the signs for the Birch

4  Bay Bob's.  (Hurlburt Dep. 10:8-14, 11:19-21; Kildall Dep. 89:24-90:1.)  Several sign companies

5  provided bids for the sign work at the Birch Bay location, including TSP and Custom Design,

6  Inc. ("CDI").  (Kildall Dep. 90:3-5.)  CDI was ultimately chosen for the sign work.  (Kildall Dep.

7  90:6-8.)  CDI was instructed by Bob Kildall that the signs to be installed at the Birch Bay Bob's

8  should be identical to those installed at the Cook Road Bob's:

9
   Q.     Was your understanding that the signage at Birch Bay would resemble the
10          signage from Exhibit 7?

11  A.     Correct.

12  Q      Was it supposed to be identical?

13  A.     Yes, yes.

14
   Q.     But what I was just trying to get at is who made the decision that the
15          signage at Birch Bay would resemble the signage in Exhibit 7, was that
           you?
16
   A.     Yeah.  This is that model, and it will all be the same.
17
   Q.     And so your decision was that the signage at Birch Bay would look
18          exactly like the signage in Exhibit 7.

19
   A.     Yes, sir.
20

21  (Kildall Dep. 90:16-91:12.)   CDI's own bid proposals confirmed that they were instructed to

22  produce signs that were identical to the Cook Road signs.  (Hurlburt Dep. 13:13-24, Ex. 3 (CDI

23  Bid Proposal for Birch Bay Bob's).)

24  In order to reproduce the Cook Road signs, CDI was instructed to go to the Cook Road

25  location and take measurements of the signs installed there.  (Kildall Dep. 92:15-18.)  CDI went

26  to the Cook Road location, surveyed, took measurements, and noted the color and the type of

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8
CASE NO. CV09-1420 RSL

FOCAL PLLC
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

neon being used.  (Dennis Deposition Transcript 13:15-19 (attached as Exhibit C to McChesney Decl.) ("Dennis Dep.").)  During his interactions with CDI, Bob Kildall told Ken Dennis (at the time, a CDI employee) that Ray George had informed Mr. Kildall that TSP had copyrights in the sign designs it had created.  (Dennis Dep. 14:7-17.)

**E.     Yakima Bob's Restaurant**

In November 2009, a Bob's restaurant was opened in Yakima, Washington.  (Roberts Deposition Transcript 5:12-13 (attached as Exhibit E to McChesney Decl.) ("Roberts Dep.").) The Yakima Bob's is owned and operated by Yakima LLC, which in turn is owned by Jeff Roberts and Bob Kildall, among others.  (*Id.*)  Yakima LLC operates the restaurant pursuant to a franchise agreement with BBB.  (Roberts Dep. 5:25-6:2, Ex. 1 (Yakima LLC-BBB Franchise Agreement).)  Under the franchise agreement, BBB maintains control over decisions regarding signage at the Yakima Bob's (Kildall Dep. 97:2-5.)

Mr. Roberts put the Yakima Bob's sign work out for bids.  (Roberts Dep. 12:12-13.)  A number of companies submitted bids for the sign work at the Yakima Bob's, including TSP and Eagle Signs LLC, owned by Jesse Oliver ("Eagle Signs").  (Roberts Dep. 12:14-17.)  Roberts first received a bid with sign designs from TSP.  (Roberts Dep. 14:11-22)  Roberts then emailed the sign designs to the other prospective sign companies asking them to produce bids based upon TSP's designs.  (Roberts Dep. 13:16-14:5, 14:20-15:4, Ex. 3 (email from Roberts to Rick Kildall re forwarding of TSP designs to other sign companies).)  Roberts instructed the sign companies to whom he forwarded TSP's designs that the signs to be produced should look exactly like TSP's designs.  (Roberts Dep. 15:5-9.)  Eagle Signs was one of the companies to whom Roberts forwarded TSP's designs.  (Roberts Dep. 15:10-16:2, Ex. 4 (email from Roberts to Jesse Oliver transmitting TSP designs).)  Eagle Signs was the company chosen by Roberts to produce signs at the Yakima Bob's.  (Roberts Dep. 12:5-7.)

Subsequent to this, Roberts received an email from Ken Dennis (at that time employed by TSP), stating that TSP owned the rights in the sign designs it had created and that they were not

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1   granting permission to BBB or the franchisee to use their designs.  (Roberts Dep. 17:24-19:10,

2   Ex. 6 (email from Ken Dennis to Roberts).)  Roberts proceeded to have Eagle Signs manufacture

3   and install the signs at the Yakima Bob's after learning of, and despite, TSP's objections.

4   (Roberts Dep. 20:5-7.)

5   **F.      Defendants' Access to TSP's Designs**

6           BBB had access to TSP's designs as a result of the working relationship between the

7   parties.  TSP provided copies of the designs to Defendants for each job it was involved in.

8   (George Decl. ¶ 5.)  Bob Kildall has testified that TSP would have provided BBB with a copy of

9   the designs, either at the time of approval of the designs by Defendants, or upon transmission of

10  the invoice from TSP to BBB:

11
12          Q.      And whatever set of drawings that you ultimately approved or decided to
                    go with, did Ray give a copy of those to you?

13          A.       Probably.  I would say, yes.  I mean I'm guessing a little bit.  But, yeah, I
                    would say, yes.  If nothing else, it would be an invoice.

14
15          Q.       So the drawings would be attached to the invoice?

16          A.       That's a probable.

            ....

17
18          Q.      And would he typically give you the paper copy or would he e-mail that to
                    you?

19          A.      Well, I wasn't too sharp at e-mails back in them days, and so I would have
20                  had -- he would -- Ray normally delivered personally.  He drove out and
                    brought stuff to me.  And probably that's the 98 percent.  He always -- he
                    brought it out to me in person.

21

22   (Kildall Dep. 78:14-20, 79:2-8.)  Moreover, Jeff Roberts testified that when TSP put in a bid to

23  construct the signs at the Yakima Bob's, Roberts forwarded TSP's designs to Rick Kildall and

24  other sign companies by email.  (Roberts Dep. 13:24-25, 14:1-10, 14:20-22.)

25  //

26  //

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:   (206) 577-9916
Fax:  (206) 260-3966

**DISCUSSION**

**A.     The Standard for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-23.

In deciding a summary judgment motion, the court must view all facts and inferences therefrom in the light most favorable to the nonmoving party. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

**B.     TSP is the Sole Owner of Valid Copyrights in the Works**

    1.     TSP's Copyright Registrations are Prima Facie Evidence of the Validity of the Copyrights.

"In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  The presumption includes a presumption of originality. *See Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) ("Because [the work] has a valid certificate of registration with the copyright office, however, [plaintiff] is entitled to a presumption of originality.").  TSP obtained registrations for each of the Works, and each registration was obtained within five years of first publication of the Works.  Therefore, TSP is entitled to a presumption that its copyrights are valid.  However, even if

1    Defendants put forth evidence attempting to rebut this presumption, there is no factual dispute as

2    to the validity and ownership of the copyrights in the designs.

3         2.        The Works are Eligible for Copyright Protection.

4         Copyright protection subsists in original works of authorship fixed in any tangible

5    medium of expression.  17 U.S.C. § 102(a).  Works of authorship include pictorial and graphic

6    works.  17 U.S.C. § 102(a)(5).  As pictorial or graphic works (i.e., designs), there can be no

7    dispute that the Works are "works of authorship" under the Copyright Act.  Similarly, there can

8    be no dispute that the Works were fixed in a tangible medium of expression.

9         Originality means "little more than a prohibition against actual copying."  *North Coast*

10   *Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992).  All that is needed to satisfy

11   originality is for the author to contribute "something more than a 'merely trivial' variation."  *Id*.

12   A work is original to an author, and thus qualifies for copyright protection, if the work is

13   independently created by the author and possesses some minimal degree of creativity.  *See Feist*

14   *Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991) (citing 1 M.

15   Nimmer & D. Nimmer, *Nimmer on Copyright* §§ 2.01[A], [B] (1990)).  An original work must

16   "possess at least some minimal degree of creativity."  *Feist*, 499 U.S. at 345.  The *Feist* Court

17   addressed the required level of creativity as follows:

18
         [T]he requisite level of creativity is extremely low; even a slight amount will
19       suffice. The vast majority of works make the grade quite easily, as they possess
         some creative spark, no matter how crude, humble or obvious it might be.
20       Originality does not signify novelty; a work may be original even though it
         closely resembles other works so long as the similarity is fortuitous, not the result
21       of copying.

22   *Id*.  (internal quotations omitted).

23        Even where a work is a compilation of preexisting design elements, the originality

24   threshold remains low: "Copyright protection may extend to such a compilation, even if the

25   material of which it is composed is not copyrightable itself . . . it is sufficient if original skill and

26   labor is expended in creating the work."  *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 438

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1  (internal citations and quotation marks omitted).  Similarly, the use of "a matter in the public

2  domain" upon which to base one's work does not preclude originality.  *See, e.g.*, *Kamar Int'l, Inc.*

3  *v. Russ Berrie and Co.*, 657 F.2d 1059, 1061 (9th Cir. 1981) ("[t]he mere fact that plaintiff used a

4  matter in the public domain does not in and of itself preclude a finding of originality, since

5  plaintiff may have added unique features to the matter so as to render it copyrightable.").

6     TSP has identified the lengthy creative process of designing the signs, and the original

7  elements that TSP created.  (TSP Resp. at 5:25-8:14; George Dep. 15:2-38:2.)  Defendants

8  cannot dispute that the Works contain elements that did not exist prior to their creation by TSP.

9  Regardless of the number of original elements in the Works, they do contain original elements.

10 This is all that is necessary to meet the extremely low standard for minimal creativity.  *See Lucky*

11 *Break Wishbone Corp. v. Sears, Roebuck & Co.*, 528 F. Supp.2d 1106, 1120-21 (W.D. Wa.

12 2007) (citing *Feist*, 499 U.S. at 345).

13     3.     TSP is the Sole Author of the Works.

14     Defendants have alleged that, assuming the Works are eligible for copyright protection,

15 BBB or others were the authors or joint authors of the Works.  (Dkt. 31 5:23-25 (Defendants'

16 Answer to Plaintiff's First Amended Complaint for Copyright Infringement); Dkt. 33 6:8-10

17 (Defendant Cody Hurlburt and B3 Birch Bay LLC's Answer to Plaintiff's First Amended

18 Complaint for Copyright Infringement); Dkt. 34 6:4-6 (Defendants Jeff Roberts and Yakima

19 Bob's Burger and Brew LLC's Answer to Plaintiff's First Amended Complaint for Copyright

20 Infringement).)  Yet, it is undisputed that TSP was the sole author of the Works.  In his

21 deposition, Bob Kildall confirmed that, while he may have had ideas about the signs to be

22 installed at the restaurants, TSP created the designs for the signs.  (*See* Kildall Dep. 19:19-

23 21:12.)

24     The Copyright Act defines a joint work as "a work prepared by two or more authors with

25 the intention that their contributions be merged into inseparable or interdependent parts of a

26 unitary whole."  17. U.S.C. § 101.  A "joint work" requires each author to make "an

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1    independently copyrightable contribution."  *Richlin v. Metro-Goldwyn*, 531 F.3d 962 (9th Cir.

2    2008) (quoting *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir.1990)).  As demonstrated

3    by Mr. Kildall's testimony, he did not participate in the drawing of the Works.  The Works were

4    drawn solely by TSP.  While Mr. Kildall may have provided ideas about what the signs should

5    look like, his ideas are not copyrightable expression.  *See* 17 U.S.C. § 102(b); *see also S.O.S.,*

6    *Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ("A person who merely describes to an author

7    what the commissioned work should do or look like in not a joint author for purposes of the

8    Copyright Act."); *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 736 (1989) ("As

9    a general rule, the author is the person who translates an idea into a fixed, tangible expression

10   entitled to copyright protection.").  Because neither Mr. Kildall nor anyone else from BBB

11   provided any creative efforts or contribution into the designs, there is no question as to joint

12   authorship by TSP and BBB.

13          4.      The Works are Not Derivative Works.

14          Defendants also allege that the Works are derived from earlier works owned by

15   Defendants.  A "derivative work" is defined by the Copyright Act as "a work based upon one or

16   more preexisting works, such as a translation, musical arrangement, dramatization,

17   fictionalization, motion picture version, sound recording, art reproduction, abridgment,

18   condensation, or any other form in which a work may be recast, transformed, or adapted."  17

19   U.S.C. § 101.  A work will be considered a derivative work "only if it would be considered an

20   infringing work if the material which it has derived from a preexisting work had been taken

21   without the consent of a copyright proprietor of such preexisting work."  *Mirage Editions* v.

22   *Albuquerque A.R.T. Co.,* 856 F.2d 1341, 1343 (9th Cir. 1988) (quoting 1 M. Nimmer, *Nimmer on*

23   *Copyright* § 3.01 (1986)) (internal quotation marks omitted).  To prove infringement, Defendants

24   must show substantial similarity in expression between an alleged original work and the alleged

25   derivative work.  *Litchfield* v. *Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (emphasis

26

1    omitted).  Similarity of expression focuses on the response of the ordinary reasonable person,

2    and considers the total concept and feel of the works.  *See Id.* at 1356-57.

3            Bob Kildall has testified that he did not provide TSP with any materials to incorporate

4    into TSP's sign designs.  (Kildall Dep. 30:11-31:1.)  Similarly, Ray George has testified that Mr.

5    Kildall did not give him instructions to incorporate anything.  (George Dep. 15:15-17; 23:12-17.)

6    Nor did Mr. George do so of his own account.  (George Decl. ¶ 6.)  There is no dispute that TSP

7    looked at elements of the Barkley Bob's and that TSP drew inspiration from elements of the

8    Barkley Bob's.  Indeed, this is what BBB intended – for TSP to create designs which tied Bob's

9    restaurant chain together.  However, there is similarly no dispute as to whether TSP copied any

10   existing elements of the BBB restaurants.  It did not. Additionally, an examination of the works

11   that BBB claims are pre-existing works that are incorporated into the Works and the Works

12   themselves demonstrate that they lack the level of similarity required to fall into the derivative

13   works category.

14           5.      Defendants' Defenses of  Inequitable Conduct, Functionality, and Waiver Fail.

15                   a.      *the evidence is clear that TSP did not engage in inequitable conduct*

16           Defendants also allege that the Plaintiff has unclean hands, has engaged in copyright

17   misuse or "inequitable conduct," or has otherwise abused the copyright process.  (*See* Dkt. 31 5:

18   10-12.)  However, Defendants can point to no evidence of such conduct by TSP.

19           Misuse of copyright is typically found in cases where the copyright owner has engaged in

20   some form of anti-competitive behavior.  *See, e.g.*, *Alcatel USA, Inc. v. DFI Technologies, Inc.*,

21   166 F.3d 772, 793 (5th Cir. 1999).  The copyright misuse doctrine "forbids the use of the

22   [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright]

23   Office and which is contrary to public policy to grant." *Altera Corp. v. Clear Logic, Inc.*, 424

24   F.3d 1079, 1090 (9th Cir. 2005).  "The misuse defense prevents copyright holders from

25   leveraging their limited monopoly to allow them control of areas outside the monopoly." *A & M*

26   *Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).  Here, TSP seeks only to enforce

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1    the exclusive right granted to it by virtue of its copyright registrations – the right to control the

2    reproduction of the Works.  There is no evidence to suggest that TSP is seeking to control areas

3    outside the grant of their exclusive right to control the reproduction of the Works.  TSP is in the

4    exact same position as the plaintiff in *A & M Records*.  And, as the Court in *A & M Records*

5    found, this Court should find there has been no copyright misuse.  *Id.*

6         Similarly, Defendants' allegation of unclean hands must fail.  Under the doctrine of

7    unclean hands, a plaintiff's copyright infringement claim may be dismissed "if defendant

8    establishes that plaintiff's evidence was false and that plaintiff was involved in a scheme to

9    defraud the public."  *Supermarket of Homes, Inc. v. San Ferndando Valley Board of Realtors*,

10   786 F.2d 1400, 1408 (9th Cir. 1986).  The defense of unclean hands in copyright actions is

11   "recognized only rarely, when the plaintiff's transgression is of serious proportions and relates

12   directly to the subject matter of the infringement action."  3 M. Nimmer, *Nimmer on Copyright,*

13   § 13.09[B] at 13-145 (1988); *see also Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 799 (9th

14   Cir. 1992).  "There is essentially no other way to interpret an unclean hands defense in a

15   copyright infringement suit other than involving copyright misuse."  *Breakdown Services, Ltc. v.*

16   *Now Casting, Inc.*, 550 F. Supp.2d 1123, 1134 (C.D. Cal. 2007); *see also Alcatel USA, Inc. v.*

17   *DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999).   There is no evidence that TSP has engaged

18   in any improper behavior, let alone behavior rising to the level required for the Court to allow

19   Defendants' unclean hands defense to remain.  TSP may not be a sophisticated copyright owner

20   that copyrights its designs as soon as they are produced, but the evidence is clear that it did not

21   do or say anything to either BBB or to any third parties (including the Copyright Office) that

22   misled or defrauded anyone.  For the same reasons as stated above, Defendant's cannot meet

23   their burden on this issue.

24              b.       the Works are not utilitarian

25         The Copyright Act defines a "useful article" as "an article having an intrinsic utilitarian

26   function that is not merely to portray the appearance of the article or to convey information."  17

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 16
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1    U.S.C. § 101.  The Ninth Circuit has previously addressed this issue in the context of

2    architectural plans.  *See Eales v. Environmental Lifestyles, Inc.*, 958 F.2d 876 (9th Cir. 1992),

3    *abrogated on other grounds by Hunt v. Pasternack*, 958 F.2d 876, 881 (9th Cir. 1992).  The

4    Court stated: "The intrinsic function of an architectural plan is to convey the information

5    necessary to enable the reader to construct a building.  It is settled law that architectural drawings

6    and plans are thus eligible for protection under the copyright codes as "pictorial, graphic, [or]

7    sculptural works." *Id*. at 879-80; *see also Infodek v. Meredeth-Webb Printing Co*., 830 F.Supp

8    614, 623 (N.D. Ga. 1993) (holding instructions for manufacturing card decks protectable).  For

9    the same reasoning, TSP's designs are eligible for copyright protection - the intrinsic function of

10   the designs is to convey the information necessary to enable TSP to construct its signs.

11                    c.      *TSP has not waived its rights in the Works*

12            "Waiver is the intentional relinquishment of a known right with knowledge of its

13   existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.,* 843 F.2d

14   394, 399 (9th Cir. 1988).  In copyright, waiver or abandonment of copyright "occurs only if there

15   is an intent by the copyright proprietor to surrender rights in his work."  4 M. Nimmer & D.

16   Nimmer, *Nimmer On Copyright* ¶ 13.06 (2000); *see also Hampton v. Paramount Pictures Corp.*,

17   279 F.2d 100, 104 (9th Cir. 1960) ("Rights gained under the Copyright Law . . . may be

18   abandoned.  Abandonment of such rights, however, must be manifested by some overt act

19   indicative of a purpose to surrender the rights and allow the public to copy.").  Waiver has

20   resulted where, for example, a copyright holder distributed a weekly newspaper which included a

21   copyright notice that stated the copyright would last for two days.  *Hadady Corp. v. Dean Witter*

22   *Reynolds, Inc.*, 739 F. Supp. 1392, 1399 (C.D. Cal. 1990).  Similarly, waiver of the copyright in

23   certain materials was found where a copyright holder submitted the materials for a competition,

24   along with a signed acknowledgement stating that he reserved no copyrights in the materials.

25   *Oravel v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp.2d 1148, 1177 (S.D. Fla. 2006).

26

1    As previously explained, TSP's sign designs bore a copyright notice proclaiming to the

2 entire world that TSP reserved its bundle of rights.  Absent the demonstration of some overt act

3 by TSP disclaiming its rights, Defendants' waiver defense fails.

4 **C.    TSP Has Not Transferred Ownership of the Designs**

5    The copyright in a work vests initially in the author or authors of the work.  17 U.S.C. §

6 201(a).  The ownership of a copyright may be transferred in whole or in part by any means of

7 conveyance or by operation of law.  17 U.S.C. § 201(d)(1).  A transfer of copyright ownership,

8 other than by operation of law, is not valid unless the agreement underlying the transfer is in

9 writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

10 17 U.S.C. § 204(a).  Defendants BBB and the Kildalls admit that there is no copyright transfer

11 agreement between TSP and any of them.  (Dkt. 31 3:4.)  TSP has never transferred ownership of

12 its copyrights to any of the Defendants.  (George Decl. ¶ 4.)  No defendant has produced an

13 agreement regarding transfer of ownership in the Works.

14 **D.    Defendants Copied the Works and/or Solicited and Assisted Others to Copy the
15          Works**

16    To prevail on a claim of copyright infringement, a plaintiff must show that (1) it owns a

17 valid copyright in the work and (2) copying of the work by the defendant.  *Three Boys Music*

18 *Corp.*, 212 F.3d 477, 481 (9th Cir. 2000).  In the absence of direct evidence of copying, a

19 plaintiff must show that the defendant had access to the copyrighted material, and that the two

20 works are substantially similar. *Id.*  Under the 9th Circuit's "inverse ratio rule," Courts require a

21 lower standard of proof of substantial similarity when a high degree of access is shown.  *Three*

22 *Boys Music Corp.*, 212 F.3d at 485.  Conversely, where there is no proof of access, a plaintiff

23 must show that the two works are "strikingly similar."  *Id.*  "By establishing reasonable access

24 and substantial similarity, a copyright plaintiff creates a presumption of copying.  The burden

25 shifts to the defendant to rebut that presumption through proof of independent creation." *Three*

26 *Boys Music Corp.*, 212 F.3d at 486.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 18
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1    1.  <u>BBB Had Access to the Works and Provided Access to Third Parties.</u>

2    The Works at issue were designed by TSP during the time the parties had an ongoing

3 business relationship, and the sign designs were submitted to defendants for approval before TSP

4 manufactured and installed the signs.  (George Decl. ¶ 3.)  Bob Kildall has testified that TSP

5 would have provided BBB with a copy of the designs, either at the time of approval of the

6 designs by BBB or upon transmission of the invoice from TSP to BBB.  (*See* Kildall Dep. 78:14-

7 20.)  Similarly, Jeff Roberts testified that when TSP put in a bid to construct the signs at his

8 franchise location, TSP provided designs to Roberts in email form.  (*See* Roberts Dep. 13:24-25;

9 14:1-10, 14:20-22.)  Consequently, Defendants had access and admittedly provided access to

10 other sign companies.

11    2.  <u>The Signs at Bob's Restaurant's Were Intended to be and Actually are Identical to</u>
12       <u>TSP's Designs.</u>

13    Ordinarily, the question of substantial similarity is a factual one that is left to the jury.

14 However, a "grant of summary judgment for plaintiff is proper where works are so

15 overwhelmingly identical that the possibility of independent creation is precluded."  *Twentieth*

16 *Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983).

17    There is no dispute that the signage at later Bob's restaurant locations was intended to

18 resemble the designs produced by TSP.  Bob Kildall testified that the signage at the Birch Bay

19 location was intended to be the same as the designs developed by TSP.  (Kildall Dep. 90:20-25;

20 91:6-14.)  The two franchisees whose depositions were taken similarly testified that the signage

21 at the later BBB locations were intended to look like the earlier signs (based on the designs

22 produced by TSP).  (*See*, *e.g.*, Hurlburt Dep. 14:10-13.)  Jeff Roberts, of the Yakima franchise,

23 testified that he forwarded the designs produced by TSP to another sign company who ultimately

24 ended up producing the signs.  (See Roberts Dep. 14:20-25).  Mr. Roberts further testified that

25 the sign company who produced the signs produced signs that looked "exactly like" the TSP

26 designs.  (Roberts Dep. 15:5-10.)  Indeed a comparison of the signs installed at the Birch Bay

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 19
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1    Bob's (Hurlburt Dep. Ex. 2) and the Yakima Bob's (Roberts Dep. Ex. 2) with the sign designs

2    depicted in the Works (George Decl. Ex.'s C & D) demonstrates the striking similarity:

3

4                                   **Birch Bay Bob's**

5

6     

7

8

9

10

11

12

13

14     

15

16

17

18

19

20                                   **VA-1-418-255**

21

22    

23

24

25

26

1

## **Yakima Bob's**

2

3

4



5

6

7

8

9

10




11

12

13

14

15

## **VA-1-418-257**

16

17

18

19



20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 21
CASE NO. CV09-1420 RSL

**FOCAL PLLC**
800 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98104
Tel:  (206) 577-9916
Fax:  (206) 260-3966

1

## CONCLUSION

2

Having demonstrated that no genuine issue of material fact exists as to the foregoing

3

issues, TSP respectfully requests that this Court grant TSP's motion for partial summary

4

judgment.  An appropriate proposed order accompanies this motion.

5

DATED: September 7, 2010

6

7

**FOCAL PLLC**

8

/s/Venkat Balasubramani

Venkat Balasubramani, WSBA #28269

9

Sean M. McChesney, WSBA #36973

10

Focal PLLC

11

8426 40th Ave SW

Seattle, WA 98136

12

Tel:    (206) 577-9916

Fax:    (206) 260-3966

13

Email: venkat@focallaw.com

Email: sean@focallaw.com

14

15

Attorneys for The Sign Post, Inc.

16

17

18

19

20

21

22

23

24

25

26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 7, 2010, I electronically filed PLAINTIFF'S MOTION

FOR PARTIAL SUMMARY JUDGMENT, DECLARATION OF RAY GEORGE IN

SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT and

DECLARATION OF SEAN M. MCCHESNEY IN SUPPORT OF PLAINTIFF'S MOTION

FOR PARTIAL SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF

system which will send notification of such filing to the following:

| | |
|---|---|
| Daniel L. Syhre | dsyhre@bpmlaw.com |
| Lawrence Gottlieb | lgottlieb@bpmlaw.com |
| James D. Nelson | jnelson@bpmlaw.com |

Executed on September 7, 2010 at Seattle, Washington.


<u>/s/ Sean M. McChesney</u>
Sean M. McChesney

CERTIFICATE OF SERVICE